Mr. Brown Good morning, your honors. James Brannett for Federal Hockey League The district court, Judge Ellis, in this case, when denying our motion to vacate a default judgment, used the categorical rule set forth in the bakery machinery case from this court. That rule is essentially, if there's an attorney in the picture somewhere, it's your own dang fault and you should face the consequences. Yeah, and what's wrong with that rule? That is, you pretty much articulated the Seventh Circuit rule and you're asking us to overrule, I should say, at least a dozen cases. What's wrong with the rule that if your attorney drops the ball, the remedy is against the attorney who's engaged in malpractice? There's at least three things wrong with applying that rule to this case. First, our motion was under Rule 60b-1, bakery machinery and the rule it applied applied to 60b-6, extraordinary circumstances. And the second thing wrong with that is that even though it is our fault, the Supreme Court in the Pioneer case said you can be at fault and still get a default judgment vacated. It depends on the language in the Supreme Court opinion is excusable neglect and what the district judge found here could be summed up as neglect, yes, excusable, no. Well, she said that it was not excusable because of what the attorney didn't do in this case. Exactly. The attorney who's, when there's no ambiguity in the law, right, or when there's no confusing order entered by a court, an attorney who just doesn't do it is not engaged in excusable neglect. And actually Pioneer said that very thing. Well, that's in a case, Your Honor, though, where the attorney is actually in front of the court already. In this case, there was no relationship whatsoever between the court and Mr. LaFaro, the attorney that we asked to retain, that we asked to appear and defend us. So we don't have any excusable neglect being offered at all. Well, we have, excusable neglect was ours, Federal Hockey League alone. And by establishing that we had an excusable neglect, that entitled us to... There wasn't any offering of excusable neglect for the attorney's malfeasance. No, and... You just said you didn't know that he was malfeasing. If you look at Federal Hockey League's conduct alone, every time we knew that we needed to do something, when the action was required, we did it that same day. So there was certainly diligence on our part. We asked Mr. LaFaro to appear and defend us. That choice was excusable neglect as well. In other words, under Bakery Machinery and 6db6, it's too late to raise that as an excuse because the attorney had already appeared in the court and had engaged in conduct before the court that was contumacious of the court's authority. Vacating a default, excuse me, vacating a default judgment does nothing to remedy the damage or the disrespect shown to the court. That doesn't apply here though. Mr. LaFaro never appeared on our behalf. He did nothing that this court, the district court, was even aware of. So there's no need to protect the administration of justice in the court involved here. What we have is, secondarily, is that he never actually was our agent. He never became our attorney. The scope of his job in this case was to appear and defend. We didn't give him the discretion to not do that. We didn't give him the discretion to sit on his hands in New York. Yes, that's true every time an attorney engages in malpractice. Clients do not tell their attorneys, oh yeah, if you engage in malpractice, that's fine with us. Malpractice is a violation of the duty to the client, the client's instructions, the client's trust. Right, but if that were excusable neglect, then malpractice would always be a ground for restarting the litigation against the other party. That's why I say you're asking us to overrule dozens of cases which hold the opposite. Well, Your Honor, there are cases that we've cited in our brief that say that that sort of abandonment of a client, even assuming there's a client-attorney relationship to begin with, vitiates that agency authority or agency relationship. So those cases, I think, are the ones that apply to this case where he didn't even begin. All right, so what would you think is the proper remedy if somebody who believes he is a victim of a tort hires a lawyer, the tort looks up what the statute of limitations is, and then just misses it, doesn't mail the complaint on time? I'm not saying that we don't have a cause of action. No, look, look. What is going to happen in that case? Is the judge going to say, well, we're just going to overlook the failure to file a complaint on time, the litigation will proceed anyway, or is the judge going to say there's no litigation against the original defendant, the tortfeasor, but now it's a malpractice suit? I hope you can get what I'm asking. That's the normal result. You seem to be saying that where the lawyer who engages in the malpractice is representing the defendant, things should be treated differently from when the lawyer who doesn't file is representing the plaintiff, and I don't see why. Well, I'm trying to draw a distinction between Federal Hockey League's relationship with Mr. LeForest. I'm not asking about Federal Hockey League. I asked a general question about parity between the lawyer who drops the ball for a plaintiff and the lawyer drops the ball for a defendant. There is no difference. There's a malpractice action there. We have a potential malpractice action. So your argument necessarily entails the proposition that if a lawyer, by malpractice, misses the statute of limitations, the defendant can't plead the statute of limitations and the suit will be treated as timely even though it is... No, because you're bringing in a third party here, the defendant, in the case. There is always a third party. There's the client, there's the lawyer, and there's the other side of the litigation. And the argument in each of these cases, your argument here, is that the other side of the litigation has to put up with more litigation and get less or no recovery, or in the court case, more recovery, because the lawyer messed things up. There's a difference between the effect of the lawyer's inaction in our case than the hypothetical you're giving. In our case, the lawyer's inaction does not do anything to the defendant that our inaction didn't already do. There's no additional prejudice to the plaintiff in this case. Pardon? Your client is the defendant. In this case, it is. I thought your hypothetical where I was the plaintiff and my attorney missed the statute of limitations. But in this case, the relationship, there was no relationship between the plaintiff, Moji, or the court, and Mr. LaFarrow. He never entered into the picture. His inaction never did anything other than our own inaction already accomplished. What difference does that make to the analysis? Because we would then be penalized by the fact, the result of our inaction, or a negligence in hiring Mr. LaFarrow, is that we get a default judgment entered against us. And if we show that that choice and our delay was excusable neglect, then we should be able to get that judgment. That gets the analysis backward. The attorney's mistake is imputed to the client. And so you have to show that there was some excusable neglect on the part of the attorney, and there wasn't any offered. And that being the case, the default judgment, there's no grounds for vacating it. Your Honor, I understand your point. And I have to, I just, I have to let, rely on the cases we cited where that the acts or omissions of the attorney are not imputed to us because of his complete failure and abandonment of us, essentially. Not only that, not only abandonment, but lying to us. Well, right, he went further and lied. So, so there is that, I would think, it also vitiates any agency relationship and any ability to impute his actions to us because he's not only engaging in malpractice, he's engaging in fraud and directly contrary to our interests. Also, if you, unless you, I would like to reserve a little bit of time for rebuttal. Okay. Thank you, Your Honor. Mr. Karas? Good morning. May it please the Court. My name is Dean Karas and I represent the Plaintiff Appellee, Kyle Emoji. With respect to whether or not there's anything wrong with the rule from bakery and machine, bakery machinery, I'm going to suggest that there's absolutely, positively, nothing wrong with that rule whatsoever. Do we know what its status is, what the status of that issue is in other circuits? Are we an odd circuit out in a conflict of some kind, perhaps? Not that I am aware of, not at all. It appears that the... And what is this rule you think is sound? That the, in this case, the defendant would be liable for the actions of its agent, in this case, attorney Lefaro. The... No, that's not the rule. It is that the lawyer's action or inaction is imputed to the client, but it's liable for that. Well, that it's imputed to him. Liability, if at all, depends on plaintiff establishing the claim for relief. Right, and all these cases look at the same thing. Excusable neglect on the part of the party's lawyer, and in this case, Judge Ellis was presented with absolutely no evidence whatsoever of excusable neglect on the part of attorney Lefaro. The defendants had every opportunity if they wished. Your proposition is that the client and the lawyer are fused, and whatever the lawyer does is imputed to the client. Because of the fact that the... Just answer, is that your position? That is my position. Well, does that square with the Pioneer decision? It does, because in the Pioneer decision... I don't think so. Pioneer starts with 60b-6 about, you know, various excuses for screwing up, and in this rather unusual case, we have total abandonment of the client by the lawyer, bolstered by fraud, in lying to the client about what the lawyer has not done. That's what it appears, but we don't know that for certain. Why can't that be regarded as excusable neglect on the part of the client? So if the client hired a... Well, the client had used this lawyer in the past, Lefaro, and apparently done a good job. So he has no reason to doubt that Lefaro won't do a, you know, decent job, and he particularly has no reason to think that Lefaro will lie to him and say he filed... He filed a pleading when he didn't. So I don't know why that isn't within the scope of the Pioneer case. Now, if the client was complicit in any way, well, sure, and ordinarily we impute the the lawyer's mistakes and malpractice to the client, but this is an unusual case, and in a case like this... With respect to the complicity of the client, Judge Ellis noted it was very peculiar that the alleged document that Mr. Lefaro or that Mr. Kernan attempted to introduce through his exhibit indicated that Mr. Lefaro was appearing both on behalf of the Federal Hockey League and the other defendant in this case, Oakley. But there was nothing more that she could do about that because there was no explanation from Mr. Lefaro or Mr. Kernan in his affidavit why that was. So with respect to complicity of the client, that's up in the air. There was no... And they had every opportunity to say that, you know, he wasn't complicit and he knew nothing about this. He even admitted that the other defendant had contacted him and asked him why an appearance hadn't been filed on his behalf. So he knew, and he knew for an extended period of time. So with respect to his complicity, I think the record is silent, and I think that the defendants had every opportunity to provide Judge Ellis with evidence of that and failed to do so. And that's how I think it's different from Pioneer. And Pioneer was very clear that you have to... You have to look at both the neglect of the defendant and of their attorney. And in this case, unfortunately, they chose not to give any evidence regarding Lefaro, and the court, I think rightfully, followed bakery machinery based on what was presented to her. And in this case, the client, Federal Hockey League, and its president didn't give notice to the insurance carrier until after the default judgment was entered. Judge Ellis took note of that as well in evaluating the equities here. And I don't know anything about that. I never had an opportunity to take this gentleman's deposition or Mr. Lefaro's deposition, and no I don't know. I think it was briefed, and it was not. There was no notice. We'll have to wait and see. It's very possible he did give them notice. I don't know. I think it was briefed, and it was not. There was no notice. There's no response. It just came in after the default judgment was entered. There was no response from the insurance agent or the insurance company that was included. So, in brief, I think that Judge Ellis did exactly what she should have done when faced with the motion that was presented to her in the manner it was presented to her, and that her ruling should be upheld. Okay. Thank you, Mr. Carroll. Thank you very much. Mr. Braddock? Just a couple points, Your Honor. The very fact that Mr. Lefaro lied to us takes this out of imputation area. That conduct cannot be imputed. That is what creates the excuse of maleglect, even taking Mr. Lefaro's conduct into account. Second, there's no evidence of complicity. It can't even possibly be inferred here. Mr. Kernan gave his affidavit that he, that was when he gave notice was to his carrier, was after the default judgment had already been answered. Well, of course, the problem is this pioneer standard is a high standard. It has to be. But did you, for example, present evidence about your history of dealings with Lefaro? Or about his apparent, you know, qualifications, experiences, and so on? You know, given there's a substantial amount of money involved and were you being responsible in hiring him? Your Honor, I see my time is up, if I can answer your question. The, we didn't get into that kind of a detail, but we did establish that we had 18 years of experience with him, and we had no reason to find him anything than an honest and competent attorney. In addition, I'm sorry if I didn't answer your question. The point here is that the impact of this on coverage is there is no liability insurance. I think that that's clear enough that the court can take judicial notice that when you first give notice to a carrier, after a default judgment has been entered, they're very well entitled to deny any duty to indemnify. Now depending on which state's law applies, they do have to try and vacate. They don't in Illinois, but in other states that might be applicable here, they do, and that's why we're here. And that's why those circumstances ought to be taken into account beyond the elements considered in bakery machinery because it's all about justice to everybody concerned, including the plaintiff. If the effect of keeping the judgment, default judgment, in place is that he gets zero dollars, I don't think anybody's interest is served by that. Have you sued LaFaro? We have not, and that brings up the reason there is no D.J. yet is because this case has to be, the reason there is no D.J. yet, no malpractice action yet, is because this case has to be resolved first. We have to show that we took an appeal, that we couldn't get a default judgment vacated, if that's going to be your ruling. I'm hoping it's not, but if it is, that answers that issue in the insurance D.J. It also answers any defense that Mr. LaFaro might bring to a malpractice action that, oh, you should have appealed. At the potential expense of giving him a statute of limitations defense. But there we are. We're well within that time. Okay. Well, thank you very much to both counsel and the court will be in recess.